J-A19044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.A.H., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| D.E.P., | : | |
| | : | |
| Appellee | : | No. 127 WDA 2015 |

Appeal from the Order entered on December 19, 2014
in the Court of Common Pleas of Greene County,
Civil Division, No. A.D. No. 94, 2011

BEFORE:  BENDER, P.J.E., JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED AUGUST 21, 2015**

S.A.H. ("Mother") appeals from the Order granting primary custody to D.E.P. ("Father").  We affirm.

K.O.P. ("Child") was born to Mother and Father on June 24, 2010. Mother and Father were never married, and they separated when Child was seven months old.  In an April 2011 custody Order, the trial court granted both Mother and Father shared legal custody, and ordered that physical custody be alternated each week.  On March 30, 2012, Father filed a Petition to modify the custody Order.  Following a hearing, the Hearing Officer recommended a modification of the custody Order, awarding Father primary physical custody, and Mother partial physical custody on weekends.  Mother requested a *de novo* hearing.  After the hearing, the trial court entered a custody Order, which provided Mother and Father physical custody for

alternating weeks. On June 12, 2014, Father again filed a Petition for modification. The Hearing Officer recommended that Father be awarded primary custody of Child and Mother partial custody on alternating weekends, provided that Mother's new husband, James C. King ("King"), a registered sex offender,[1] was not present. Mother again requested a *de novo* hearing. Following a hearing, the trial court entered an Order, agreeing with the custody recommendation of the Hearing Officer. Mother filed a timely Notice of Appeal.

On appeal, Mother raises the following questions for our review:

1. Did the trial court abuse its discretion by modifying custody on the basis of Mother's new spouse when the trial court lacked competent evidence establishing [King] posed a danger to [C]hild[,] and failed to perform the analysis required by 23 Pa.C.S.[A.] § 5329?

---

[1] The trial court noted the following with regard to King's registration as a sex offender:

In 2014, Mother married [King], a 48[-]year[-]old convicted sex offender, who is registered under the Pennsylvania Sexual Offender's Registry Act. He was arrested and convicted in Ohio in 2005, after driving to Columbus to meet a person whom he believed to be a 14[-]year[-]old girl. When he got there[,] he learned he had been communicating with an Ohio State Policeman. He was sentenced to a term of one to four years. After release and while on parole in Pennsylvania, he was charged in 2006 with corruption of a minor and indecent assault. These charges allege he induced a 15[-]year[-]old girl to engage in oral sex. He pled guilty on August 17, 2006, and was sentenced to sixteen to thirty-two months. He served out the maximum.

Trial Court Opinion, 12/19/14, at 6 (citation omitted). King is a Tier II sexual offender and must register for 25 years. *Id.* at 7.

2. Can a trial court reasonably conclude that a forty-eight (48) year old heterosexual man married to a younger looking woman[,] and who was convicted for inappropriate sexual conduct with teenage girls approximately one decade ago[,] poses a danger to a four year old boy as the basis to modify custody without the assistance of expert testimony?

3. Does a trial court's modification of custody on the basis that [M]other "displays poor judgment" because she married an older man whom she met years before [] Child was born and who has completed criminal sentencing for prior inappropriate sexual conduct with a teenage girl nearly a decade ago violate Mother's rights as guaranteed by §[] 1 of the Pennsylvania Constitution and the Fourteenth Amendment of the United States Constitution?

Brief for Appellant at 5-6 (questions reordered).

Our standard of review for modification of a custody order is as follows:

[W]e are not bound by findings of fact made by the trial court[,] which are unsupported by the record, nor are we bound by the court's inferences drawn from the facts. However, on issues of credibility and weight of the evidence, we defer to the findings of the trial judge, who had the opportunity to observe the proceedings and the demeanor of the witnesses. Only where we find that the custody order is manifestly unreasonable as shown by the evidence of the record will an appellate court interfere with the trial court's determination. Therefore, unless the trial court's ruling represents a gross abuse of discretion, we will not interfere with an order awarding custody.

*Andrews v. Andrews*, 601 A.2d 352, 353 (Pa. Super. 1991) (quotations marks and citations omitted). "[T]he ultimate consideration for the court is a determination of what is in the best interest of the child, and all other considerations are deemed subordinate to the child's physical, intellectual,

moral, and spiritual well-being." ***Nonnenman v. Elshimy***, 615 A.2d 799, 801 (Pa. Super. 1992).

In modifying a custody order, the trial court must consider the following factors:

1) Which party is more likely to encourage and permit frequent and continuing contact.

2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

3) The parental duties performed by each party on behalf of the child.

4) The need for stability and continuity in the child's education, family and community life.

5) The availability of extended family.

6) The child's sibling relationships.

7) The well-reasoned preference of the child, based on the child's maturity and judgment.

8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

10) Which party is more likely to attend to the child's daily physical, developmental and special needs.

11) The proximity of the residences of the parties.

12)  Each party's availability to care for the child or ability to make appropriate arrangements.

13)  The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

14)  The history of drug or alcohol abuse of a party or member of a party's household.

15)  The mental and physical conditions of a party or member of a party's household.

16)  Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

We will address Mother's first two claims together. Mother asserts that the trial court abused its discretion in awarding primary custody to Father without any evidence to show that King is a threat to Child. Brief for Appellant at 14, 24. Mother claims that Father presented no evidence that Mother's relationship with King was harmful to Child. *Id.* at 16-17. Mother argues that the trial court's conclusions were unreasonable, and that the

trial court did not conduct proper analysis under 23 Pa.C.S.A. § 5329.[2]  Brief

for Appellant at 20-21; ***see also id.*** at 18 (wherein Mother argues that the

trial court only relied upon section 5328(a)(16) in modifying the custody

order).  Mother argues that the trial court needed expert testimony in order

_____

[2] 23 Pa.C.S.A. § 5329 states the following:

> **(a) Offenses. –** Where a party seeks any form of custody, the
> court shall consider whether that party or member of that party's
> household has been convicted of or has pleaded guilty or no
> contest to any of the offenses in this section or an offense
> another jurisdiction substantially equivalent to any of the
> offenses in this section.  The court shall consider such conduct
> and determine that the party does not pose a threat of harm to
> the child before making any order of custody to that parent
> when considering the following offenses:
>
> * * *
>
> 18 Pa.C.S.[A.] § 3126 (relating to indecent assault)
>
> * * *
>
> 18 Pa.C.S.[A.] § 6301 (relating to corruption of minors)
>
> * * *
>
> **(c) Initial evaluation. –** At the initial in-person contact with
> the court, the judge, conference officer or other appointed
> individual shall perform an initial evaluation to determine
> whether the party or household member who committed an
> offense under subsection (a) poses a threat to the child and
> whether counseling is necessary.  The initial evaluation shall not
> be conducted by a mental health professional.  After the initial
> evaluation, the court may order further evaluation or counseling
> by a mental health professional if the court determines it is
> necessary.

23 Pa.C.S.A. § 5329.

to find that King posed a threat to Child. *Id.* at 20-21, 26-27. Further, Mother contends, the trial court abused its discretion when it partially based its decision on the negative reaction that other parents would have to King. *Id.* at 22.

At the *de novo* hearing, Father testified that he is a meat department associate at Wal-Mart, and that he typically works 11 a.m. to 7 p.m. on Tuesdays and Thursdays, and 6 a.m. to 3 p.m. the rest of the week. N.T., 12/10/14, at 16. Father stated that his sister, his nephews, and his daughter helped with Child whenever he needed it. *Id.* at 21-22. Father testified that Mother liked to "party" a lot and although Child has suffered from severe diaper rash in the past, while in Mother's care, Father has not had any problems with Mother's care since that time. *Id.* at 17-18.

Father stated that he petitioned for a modification of custody because he discovered that Mother was married to a sex offender. *Id.* at 18. Father testified that he would have no objection to Mother having visitation with Child as long as King was not present. *Id.* at 8. Father also testified that he made attempts to reach out to Mother and allow Child to have visits outside of the schedule set forth in the custody Order while King was not present, so that Child could see his half-brother, but that Mother never responded. *Id.* at 22. Father further noted that prior to King, Mother dated Robert Vonvital ("Vonvital"), who was also a registered sex offender. *Id.* at 9; *see also id.* at 26-27 (wherein Amanda Wilson, Mother's ex-girlfriend, testified that

despite the fact that Vonvital was not allowed around children, Mother took both Child and her other son to Vonvital's house).

Mother testified that she works in a nursing home, and that she is pursuing a degree in nursing at a community college. *Id.* at 51. Mother stated that her other child, Child's half-brother, and Child are very close and love each other very much. *Id.* at 52. Mother also testified that she believes that Father is jealous of her new marriage and is only using this Petition to get to her. *Id.* at 51.

Mother stated that she was aware of King's past before she married him. *Id.* at 53. Mother testified that since King was released from prison, he has not approached any underage children, and he had never done anything to her children. **Id.** at 42. Mother stated that King loves Child, and that Child is completely safe with King. *Id.* at 43.

King testified that he is no longer a danger to children. *Id.* at 64. King also testified that he attended a sex offender group while in prison. *Id.* King stated that he recognized that his actions were wrong, and that he was ashamed for his prior actions. *Id.* at 65-66. King asserted that he loves Child, and that Child is 100% safe with him. *Id.* at 67.

After considering all 16 factors in section 5328(a), the trial court found that no factor favored either side except for factor 16 ("any other factor"). **See** Trial Court Opinion, 12/19/14, at 2-6. With regard to factor 16, the trial court stated as follows:

> We have much less confidence than Mother that King can confine his sexual interest to pubescent women or girls (Mother appears young enough to be his daughter) rather than prepubescent boys. The fact that King pleaded guilty to a violation of 18 Pa.[C.S.A.] § 3126(a)(8) means that he is a Tier II sexual offender, pursuant to 42 Pa.[C.S.A.] § 9799.14(c)(1.3), and must register with the Pennsylvania State Police for 25 years. In fact, the mother of King's Pennsylvania victim lives nearby and posted a notice on her home that King, a registered sex offender, lived in the neighborhood. What parent would let her child befriend [Child]? We believe that Mother's marriage to King displays poor judgment on her part.

Trial Court Opinion, 12/19/2014, at 7. As a result, the trial court modified the custody Order and granted Mother partial physical custody on alternating weekends so long as King was not present. *Id.*

Our review of the record discloses that the trial court did not abuse its discretion in modifying the custody Order and awarding primary custody to Father. The trial court determined that King, as a sex offender, poses a threat to Child. *See* 23 Pa.C.S.A. § 5329(c) (stating that "[t]he court ... shall perform an initial evaluation to determine whether the party or household member who committed an offense under subsection (a) poses a threat to the child. . . ."); *see also Andrews*, 601 A.2d at 353 (stating that "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge, who had the opportunity to observe the proceedings and the demeanor of the witnesses."). The trial court was not required to have an expert determine whether or not King was a threat to Child. *See* 23 Pa.C.S.A. § 5329 (stating that "[t]he court may order further evaluation or counseling by a mental health professional **if the court**

**determines it is necessary**.") (emphasis added). Thus, because the trial court determined that it would be in the best interest of Child for primary custody to be awarded to Father, Mother's first two claims are without merit.

In her third claim, Mother argues that the trial court's decision infringes upon her constitutional rights. Brief for Appellant at 24. Mother asserts that marriage and child-rearing are inalienable rights, and that the trial court can only take away the right to visitation under the strictest scrutiny. *Id.* Mother contends that because the trial court lacked evidence and had no reasonable basis to find that King posed a threat, the trial court has infringed upon her constitutional right to marriage and right to her child without having a valid state interest. *Id.* at 25.

As noted above, the trial court had a reasonable basis to conclude that King was a danger to the Child. *See Nonnenman*, 615 A.2d at 801 (stating that "[t]he ultimate consideration for the court is a determination of what is in the best interest of the child, and all other considerations are deemed subordinate to the child's physical, intellectual, moral, and spiritual well-being."). Further, the trial court has not taken away Mother's visitation, but has merely limited her visitation to alternate weekends without King being present. *See* Order, 12/19/14, at 2 (unnumbered). Therefore, Mother's final claim is without merit, as Mother has not demonstrated that her constitutional rights were violated.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/21/2015</u>